No. 87-516

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

AETNA LIFE INSURANCE COMPANY,
a corporation,

        Plaintiff and Respondent,

   -vs-

JAMES D. SLACK, JR., et al.,

        Defendants and Appellants.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
               In and for the County of Carbon,
               The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James D. Slack, Jr., Red Lodge, Montana

    For Respondent:

        Dorsey & Whitney; Stephen D. Bell and Mary Jo
        Mickelson, Billings, Montana

---

Submitted on Briefs:  April 28, 1988

Decided:  June 9, 1988

Filed:  JUN 9 1988

_____
             Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant/appellant James D. Slack, Jr., appeals a summary judgment granted in favor of plaintiff/respondent, Aetna Life Insurance Company. Summary judgment was granted September 18, 1986 by the Honorable Robert Holmstrom in the Thirteenth Judicial District, Carbon County, Montana. We affirm in part and remand in part.

On August 14, 1979, Bear Creek Land and Cattle Company (Bear Creek), a Montana partnership, executed a promissory note with Aetna Life Insurance Company in the amount of $2,500,000. The loan was secured by executing a "mortgage deed and security agreement" on property owned by Bear Creek located in Carbon County. Financing statements were also filed to perfect the mortgagee's security interest in certain fixtures and personal property described in the mortgage. The defendant/appellant, James D. Slack, Jr. (Slack), subsequently assumed the obligations under the mortgage and promissory note by entering an "assumption agreement" January 4, 1982. As part of the agreement, he received the property used as security in the mortgage. Title to the property was transferred to a partnership named the Sundance Land and Cattle Company, in which Slack was a partner. Additionally, on January 4, 1982, Slack and Aetna entered a "loan modification agreement and amendment to mortgage," modifying the payment provision of the promissory note and excluding a certain portion of the land from the legal description contained in the mortgage. The financing statements were also amended.

Slack later defaulted on the promissory note and on May 25, 1984, Aetna accelerated the loan and declared the entire amount of the loan due. On April 4, 1985, Aetna filed a

2

complaint to foreclose on the mortgaged property. Aetna moved for summary judgment and the District Court heard arguments on the motion August 18, 1986. During the hearing, Slack admitted certain payments were not made and that Aetna was entitled to a judgment on the promissory note, but objected to the nature and extent of Aetna's prayer for relief. The District Court subsequently concluded there was no genuine issue of material fact, found Aetna was entitled to foreclose its mortgage, and granted summary judgment in Aetna's favor. A default judgment was rendered against the remaining defendants on February 17, 1987, with the exception of the Atlantic Richfield Company which was dismissed pursuant to a stipulation with Aetna.

Slack raises seven issues for our consideration on appeal:

1. Did the District Court's order properly foreclose appellant's interest in the property?

2. Did the District Court commit error in not limiting the foreclosure sale to only mortgaged property?

3. Did the District Court commit error in not excluding the sale of livestock and growing crops from the sale?

4. Did the District Court commit error in ordering that the mortgaged real property be sold en masse?

5. Did the District Court use incorrect figures to calculate interest and the amount of the judgment?

6. Does the promissory note implement a usurious interest rate?

7. Did the District Court incorrectly allow a deficiency judgment against the appellant Slack?

3

1. Did the District Court order properly foreclose appellant's interest in the property?

Slack contends the District Court improperly foreclosed his interest in the mortgaged property in its amended decree of foreclosure and order of sale dated September 21, 1987. Specifically, Slack challenges a statement by the District Court declaring that the defendants "have no lien, right, title, estate, claim, or interest on or to the mortgaged property, whether real, personal, or mixed hereinafter described." Slack argues that this language incorrectly severed all of his interest in the land prior to the foreclosure sale and severely hindered his attempts to sell the land. Slack's intent was to sell the land prior to the foreclosure sale and satisfy the amount owing on the promissory note. Slack states the wording of the order is in violation of § 71-1-202, MCA, which states in pertinent part:

> A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale.

The order did not violate § 71-1-202, MCA, because it did not enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale. Further, the District Court's order did not and could not affect Slack's one-year statutory right of redemption. See, § 71-1-228, MCA and § 25-13-801 et seq., MCA. With this right of redemption, Slack had the ability to negotiate with potential third-party purchasers because he had the right to redeem the property upon obtaining sufficient financing. Therefore, the order did not incorrectly sever Slack's interest in the property.

4

2. Did the District Court commit error in not limiting the foreclosure sale to only mortgaged property?

Slack states the order directs the sale of property which is not included in the mortgage and was never intended to be used as security for the loan. Slack contends "the District Court orders and adjudges that the land and other property included in the mortgage, 'including, but not limited to' the property described therein, is foreclosed and ordered sold by the sheriff." Slack argues that this language is overly broad and expressly orders that the sale not be limited to the mortgaged property. However, Slack's argument rests on reading only isolated portions of the order. When read entirely, it is plain that the sale is to apply only to property used as security for the loan and included in the agreements between the parties.

Slack also contends that the District Court incorrectly ordered a sale of the following property:

(d) all irrigation equipment acquired by the defendant James D. Slack, Jr., and placed by him on the mortgaged property, including, but not limited to, that irrigation equipment described in exhibits D and E to the complaint.

Slack states that neither the mortgage or security agreements include such property. In his reply brief, Slack does admit there is specific language in his security agreement with Aetna addressing such property and we conclude this particular issue is withdrawn.

3. Did the District Court commit error in not excluding the sale of livestock and growing crops from the sale?

Slack implies in the statement of this issue that the District Court incorrectly ordered the sale of livestock at

5

the foreclosure sale. However, he presents no further statements in support of this allegation. We are unable to locate any statements directing the sale of livestock in the order, and it does not appear that any livestock was sold. We find that this issue is without merit.

Slack also states that his "right to harvest his growing crops during the redemption period has been summarily terminated by the decree and the crops ordered sold at sheriff's sale [sic]." However, Slack does not cite the portion of the order which he claims to have this effect. Indeed, it does not appear that any such order was made. We conclude that this argument is without merit.

> 4. Did the District Court commit error in ordering that the mortgaged real property be sold en masse?

Slack asserts the District Court incorrectly ordered that the real property be sold as one parcel, and that the sale would have yielded a higher price if the land had been sold as separate parcels. Slack states that all of the property is not contiguous and it is capable of being rationally subdivided. He relies on § 25-13-704(2), MCA, and contends that if a sale of real property consists of several known lots or parcels, they must be sold separately.

Slack is correct in that a foreclosure sale should reasonably attempt to obtain a maximum price for the real property. His specific reliance on § 25-13-704, MCA, however, is misplaced because the proceedings for foreclosure of a mortgage are exclusively provided for in § 71-1-222, MCA. See, Federal Land Bank of Spokane v. Heidema (Mont. 1986), 727 P.2d 1336, 1338, 43 St.Rep. 2020, 2022; and, Thomas v. Thomas (1911), 44 Mont. 102, 119 P. 283. Whether or not it is appropriate to sell foreclosed property as one

6

parcel or as separate parcels will depend on the particular facts of each case. Under the facts of this case, the mortgage itself provides that the land may be sold in whole. Slack did not present the District Court with any solid evidence, such as appraisals, affidavits, or other evidence, that would offer substantial proof that the property would sell for more in separate parcels. The mortgaged property was purchased and mortgaged as a single parcel. Further, Slack assumed the mortgage obligations as though the property were one unit. It is generally within the discretion of the District Court to determine whether property at a foreclosure sale shall be sold as one unit or several. See, Elston v. Hix (1923), 67 Mont. 294, 215 P. 657. Absent an abuse of that discretion we will not reverse the District Court's determination. After reviewing the record, we conclude there is no abuse of discretion and we affirm the District Court's determination.

> 5. Did the District Court use incorrect figures to calculate interest on the amount of the judgment?

Slack contends that the District Court order had the effect of charging two interest rates simultaneously resulting in a total interest rate of 19.925% per annum. In its amended decree of foreclosure and order of sale, filed on September 22, 1987, the District Court determined principal, interest, and other charges totalled $3,661,385.30 and that this amount constituted the total judgment to Aetna against Slack exclusive of the amounts contained in the bill of costs. The order refers to two different rates of interest owing to Aetna. The first rate of interest comes from the promissory note and was accruing at a rate of $985.57 per day. The second rate of interest refers to the 10% per annum

statutory rate of interest. Slack contends the District Court order is worded so that interest accrues simultaneously at both rates resulting in a combined total rate of 19.925% per annum on the judgment amount. Slack bases his argument on the fact that the District Court states the interest provided in the note applies until "the date of the satisfaction of the judgment." In contrast, the order also states the 10% statutory interest rate applies "from and after the date of judgment." It is clear that both interest rates could not apply at the same time. Instead, it appears that the intent was to apply the rate of interest provided in the note until the date of judgment. After the date of judgment, September 22, 1987, the order clearly applies the 10% interest rate. In other words, the rate provided in the promissory note, $985.57 per day, stopped on the date of the District Court order at which time the 10% interest rate began. Aetna agrees with that interpretation and is not seeking interest at both rates in a combined fashion.

Slack also contends the amount of the judgment is in error by more than $373,000. Other than the bald assertion that the judgment amount is in error, Slack offers no specific analysis explaining why this is so. Without further explanation or analysis on the part of Slack, we find this argument has no merit.

Finally, Slack states that the District Court awarded $2,300.21 for costs and disbursements relating to the maintenance of the mortgaged property. Slack complains that there is no supporting documentation for this award in the record. Aetna makes no mention of this particular issue in its brief and the record does not appear to contain any support for this particular award. Therefore, we reverse and remand as to this particular issue only.

8

6. Does the promissory note implement a
usurious interest rate?

Slack contends that the promissory note provides for a 15% per annum interest rate on amounts not paid when due plus a 4% late charge on those amounts. He states that the result is a 19% per annum interest rate that should be held usurious. However, in reviewing the record from the District Court we note that Slack did not present any argument relating to usury. Slack is presenting this argument for the first time on appeal. It has long been the general rule that we will not consider a legal theory raised for the first time on appeal. E.g., Hanley v. Dept. of Revenue (1983), 207 Mont. 302, 306, 673 P.2d 1257, 1259. See also, Velte v. Allstate Ins. Co. (1979), 181 Mont. 300, 304-305, 593 P.2d 454, 456-457.

7. Did the District Court incorrectly
allow a deficiency judgment against
appellant Slack?

Finally, Slack contends that Aetna was not entitled to a deficiency judgment because the mortgage is a purchase money mortgage for which a deficiency is not allowed. Slack relies on § 71-1-232, MCA, which states:

> Upon the foreclosure of any mortgage, executed to any vendor of real property or to his heirs, executors, administrators, or assigns for the balance of the purchase price of such real property, the mortgage shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same.

This statute is inapplicable to the facts of this case. Aetna is not the vendor of the real property and foreclosure of the mortgage is not executed to Aetna to satisfy the

9

balance of the purchase price of the real property. Instead, Aetna assumed the status of mortgagee so as to secure its loan, and the foreclosure of the mortgage was executed to satisfy the amount owing on the promissory note. Section 71-1-232, MCA, does not prohibit a deficiency judgment under the facts of this case.

We affirm the judgment of the District Court with the exception of the award of Two Thousand Three Hundred Dollars and Twenty-one cents ($2,300.21) for reasons herein before stated.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices